IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KATIE S. TAMASHIRO, | ) Civ. No. 06-00188 ACK/KSC |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FRANCIS J. HARVEY, in his | ) |
| capacity as the Secretary | ) |
| of the Army, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING
DEFENDANT'S MOTION TO TRANSFER VENUE

PROCEDURAL BACKGROUND

On April 7, 2006, Katie S. Tamashiro ("Plaintiff")
filed a Complaint seeking declaratory, injunctive, and monetary
relief against Francis J. Harvey, in his official capacity as the
Secretary of the Army ("Defendant"), for discrimination based on
race (Asian), gender (female), and age (60) in violation of Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §
2000e-1, et seq. ("Title VII"), and the Age Discrimination in
Employment Act 29 U.S.C. § 633a, et seq. ("ADEA").

Before Defendant responded to the Complaint, Plaintiff
filed a First Amended Complaint on June 5, 2006.  The Amended
Complaint was identical in substance to the original Complaint.
It was submitted for the sole purpose of correcting the citation

to the general venue provision that applies to the ADEA.  See Opposition at 4 n. 1.  All references to the "Complaint" in this Order are to the June 5, 2006 First Amended Complaint.

Defendant filed a Motion to Dismiss Plaintiff's Complaint for Lack of Venue ("Motion") on June 9, 2006.  In the alternative, Defendant requested that the Court transfer the case to the District of Alaska.  On August 31, 2006, Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Venue ("Opposition").  Defendant filed a Memorandum in Reply to Plaintiff's Opposition to Motion to Dismiss for Lack of Venue ("Reply") on September 7, 2006.

The parties appeared before the Court for a hearing on Defendant's Motion on September 18, 2006.

## FACTUAL BACKGROUND[1]

Plaintiff Katie S. Tamashiro, a Chinese-American female born on November 1, 1943, has been employed with the United States Army Corps of Engineers ("Corps") since 1978.  Complaint ¶ 7.  In March 2006, Plaintiff was promoted to the position of GS-13 Civil Watch Officer/Emergency Operations Specialist at the Corps' Headquarters in Washington D.C..  Opposition (Tamashiro Declaration ¶ 14).  In April 2006, Plaintiff relocated to

---

[1]  The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Washington D.C. from Honolulu, Hawaii, but she maintains her home
in Hawaii and plans to return after a three year term.  Id.
Prior to the promotion and at all times relevant to this case,
Plaintiff worked as a GS-12 Emergency Operations Planner in the
Corps' Emergency Management Division of the Honolulu Engineer
District.  Complaint ¶ 7.

The subject of the controversy at hand is Plaintiff's
application for and the ultimate denial of a promotion to the
position of GS-13 Emergency Manager in the Alaska District of the
Corps in 2003.  Plaintiff applied for the position in February
2003.  Complaint ¶ 9.  Plaintiff declares that she was the only
female applicant for the position.  Opposition (Tamashiro
Declaration ¶ 6).  The Corps assembled a selection panel
("Panel") for the purpose of making the hiring decision
consisting of three Caucasian males, Lieutenant Colonel Timothy
Griffith, Panel Chair, Steve Philben, and Allen Churchill.
Complaint ¶ 9.  The Panel, along with human resources personnel,
reviewed the applicants for the Manager position and ranked the
resumes of the candidates.  Id.  Based on the strength of her
resume and application, Plaintiff was ranked second among all
applicants.  Id.

The Panel conducted eight telephone interviews of the
top-ranked applicants on or about May 27, 2003.  Complaint ¶ 10.
At the time of the interviews, Panel members Griffith and

3

Churchill were located in Alaska, and Panel member Philben was stationed in Hawaii.  Opposition at 4.  Plaintiff alleges that her number two ranking was downgraded after the telephone interview.  Complaint ¶ 13.  Upon the completion of the telephone interviews, the Panel offered the position to a Caucasian male, who declined the offer.  Complaint ¶ 11.  The Panel then offered the job to a second Caucasian male, but that candidate could not report to the Manager's position in sufficient time.  <u>Id.</u> Consequently, the offer was withdrawn.  <u>Id.</u>  Finally, the Panel offered the Manager position to David Spence, another Caucasian male, whom Plaintiff alleges was substantially younger and less experienced than her.  Complaint ¶ 12.  Spence accepted the offer.  <u>Id.</u>

Plaintiff also alleges that prior to Spence's offer, the Panel downgraded the ranking of another Caucasian male while Spence's ranking was upgraded.  Complaint ¶¶ 13-14.  The downgraded applicant is approximately the same age as Plaintiff. Complaint ¶ 14.  This was the fourth time since 2000 that Plaintiff applied for a GS-13 level position and was denied. Opposition (Tamashiro Declaration ¶ 11).

As a result, Plaintiff contacted a counselor at the Equal Employment Opportunity Commission ("EEOC") for the purpose of filing a race, gender, and age discrimination complaint on September 8, 2003.  Plaintiff then filed a formal complaint with

the EEOC on December 9, 2003.  Plaintiff accepted a GS-13 level
position in March 2006, and moved to Washington D.C. on April 22,
2006.  Plaintiff commenced the action currently before this Court
on April 7, 2006, prior to her relocation.

**STANDARD**

**I.    Motion to Dismiss for Lack of Venue**

A party may move to dismiss a case for lack of venue
pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule
12(b)(3)").  In a Rule 12(b)(3) motion, unlike a motion to
dismiss pursuant to Rule 12(b)(6), the pleadings need not be
accepted as true and the court may consider facts outside the
pleadings.  Murphy v. Schneider National, Inc., 362 F.3d 1133,
1137 (9th Cir. 2003); Richards v. Lloyd's of London, 135 F.3d
1289, 1292 (9th Cir. 1998); Arqueta v. Banco Mexicano, S.A., 87
F.3d 320, 324 (9th Cir. 1996); Chateau des Charmes Wines Ltd. v.
Sabate USA, Inc., 2002 WL 413463, *1 (N.D. Cal. 2002); see
generally 5C Charles A. Wright & Arthur R. Miller, Federal
Practice and Procedure § 1364, at 126 n. 9 (3d ed. 2004) (citing
Transmirra Prods. Corp. v. Fourco Glass Co., 246 F.2d 538, 539
(2d Cir. 1957) (holding that a court may consider affidavits,
answers to interrogatories, and depositions in determining proper
venues)).  However, the court must view the facts in the light
most favorable to the non-moving party and draw all reasonable
inferences in the non-moving party's favor.  Murphy, 362 F.3d at

5

1138-39; <u>Chateau des Charmes</u>, 2002 WL 413463, *1; <u>Darby v. United States DOE</u>, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002); <u>Cole v. Appalachian Power Co. v. International Broth. of Elec. Workers, Local No. 978</u>, 1995 WL 463711, *3 (S.D.W. Va. 1995).

II.  **Motion to Transfer**

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  <u>Hi-Pac, Ltd. v. Avoset Corp.</u>, 980 F. Supp. 1134, 1139 (D. Haw. 1997) (internal quotation marks and citations omitted).  A motion to transfer venue pursuant to Section 1404(a) requires the Court to weigh multiple factors in its determination of whether transfer is appropriate in a particular case.  <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498-99 (9th Cir. 2000).

"The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted).  Ultimately, the moving party has the burden of showing that an alternative forum is the more appropriate forum for the action.  <u>Jones</u>, 211 F.3d at

499.

## DISCUSSION

Defendant contends that the District of Hawaii is an improper venue for this case and moves the Court to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3) or transfer the matter to the District of Alaska pursuant to 28 U.S.C. § 1406(a). In the alternative, if the Court finds that the District of Hawaii is a proper venue, Defendant moves the Court to transfer the case to the District of Alaska pursuant to 28 U.S.C. § 1404(a).[2]  The Court will first address whether venue is proper in the District of Hawaii.

## I.   Identifying Proper Venues

Cases that are not founded solely on diversity of citizenship may only be brought, except when the law provides otherwise, in a judicial district (1) where the defendant resides; (2) in which a substantial part of the events or omissions giving rise to the controversy occurred; or (3) where the defendant may be found, if no other appropriate district

---

[2] Defendant makes a Section 1404(a) transfer request for the first time in his Reply, however the Court will consider the request as it is sufficiently similar to Defendant's Section 1406(a) request in the Motion.  Moreover, Plaintiff addresses the possibility of a Section 1404(a) transfer in her Opposition, so she is not prejudiced by the Court's consideration of a transfer of venue on such grounds at this time.

exists.  28 U.S.C. § 1391(b) ("Section 1391").[3]  However, this general venue statute "has its limitations."  Johnson v. Payless Drug Stores Northwest, Inc., 950 F.2d 586, 587 (9th Cir. 1991) (quoting Bolar v. Frank, 938 F.2d 377, 378 (2d Cir. 1991) (per curiam)).  In Title VII employment discrimination cases, the explicit venue provision of Title VII, 42 U.S.C. § 2000e-5(f)(3), applies rather than the general provision found in Section 1391.  Johnson, 950 F.2d at 587-88.

> A Title VII claim may be properly filed
>
> in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3); Johnson, 950 F.2d at 586; Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 504 (9th Cir. 2000).  Interpreting the first basis for jurisdiction under 42 U.S.C. § 2000e-5(f)(3), the United States Court of

---

[3]  The ADEA does not contain its own venue provision so the general venue provision contained in Section 1391 governs ADEA claims.  Wood v. Sears, Roebuck & Co., 881 F.2d 1085, 1989 WL 90171, *6 (9th Cir. 1989) (not relying on this unpublished opinion as precedent); Benton v. England, 222 F. Supp. 2d 728, 731 (D. Md. 2002);  Archuleta v. Sullivan, 725 F. Supp. 602, 605 (D.D.C. 1989).  Defendant does not contest that the District of Hawaii is a proper venue for Plaintiff's ADEA claim.

Appeals for the Ninth Circuit ruled that "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt." Passantino, 212 F.3d at 506.  In so holding, the court concluded that an employee who maintained a home office and alleged discrimination due to her employer's failure to promote her, could sue the company in the district where her home office was located.  Id. at 506.

Jennifer Passantino was a National Account Manager for Johnson & Johnson Consumer Products, Inc. ("CPI") and was responsible for selling over $12 million in product each year. Id. at 499.  Passantino was located in Tacoma, Washington and operated out of a home office, as most of her similarly situated colleagues did.  Id. at 500.  Concluding that she had been passed over for numerous promotions because of her gender, Passantino filed suit in the Western District of Washington.  CPI moved to transfer the case, arguing that venue was improper in Washington because the alleged unlawful employment practices occurred in New Jersey, the location of the CPI's home office.  Id. at 504.

In its assessment of the dispute, the Ninth Circuit noted that Congress provided a broad provision for alternate forums "to afford citizens full and easy redress of civil rights grievances,"  Id. (quoting Richardson v. Alabama State Board of Education, 935 F.2d 1240, 1248 (11th Cir. 1991)), and that Title

9

VII only limits the available venues to those "concerned with the alleged discrimination." Passantino, 212 F.3d at 504 (quoting Stebbins v. State Farm Mutual Auto Ins. Co., 413 F.2d 1100, 1102 (D.C. Cir. 1969)). The court summarized Title VII's venue provision broadly as one that "allow[s] suit in the judicial district in which the plaintiff worked or would have worked." Passantino, 212 F.3d at 504-05 (citing Montero v. AGCO Corp., 192 F.3d 856 (9th Cir. 1999)); Cf. Varsic v. United States District Court, 607 F.2d 245 (9th Cir. 1979).

Failure-to-promote discrimination controversies present unique circumstances in which the discriminatory actors need not be in the same location as the employee.  The decision to engage in a discriminatory practice may be made in a location far from the individual who suffers the effects of such a decision.  The Ninth Circuit recognized that employers could exploit this separation by demanding cases be adjudicated thousands of miles away from the employee's workplace.  Consequently, the court held that proper venue also exists where the effect of the employment practice may be felt, specifically where the plaintiff works. Passantino, 212 F.3d at 505.  Thus, in Passantino, the court held that the Western District of Washington was a proper venue.  Id.

Here, as in Passantino, only the first basis of the Title VII venue provision may authorize Plaintiff's choice of venue.  Id. at 504 n. 7; see 42 U.S.C. § 2000e-5(f)(3) ("Such an

action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . ."). Plaintiff does not assert that the employment records related to her failure-to-promote claim are kept in Hawaii, nor does she suggest that she would have worked in Hawaii had she received the promotion.[4] She asserts, pursuant to the Ninth Circuit's <u>Passantino</u> ruling, that venue is proper in the District of Hawaii because she suffered the effects of the alleged discriminatory employment decision in Hawaii.

The Court agrees that the <u>Passantino</u> decision necessitates a finding that the District of Hawaii is one of the proper venues for Plaintiff to bring her lawsuit. In her 27 year career with the Corps, Plaintiff worked and traveled in all four Districts of the Pacific Ocean Division, settling in Hawaii from 2000 to April 2006. Complaint ¶ 7. Seeking a promotion to a level GS-13 position, Plaintiff applied to be an Emergency Manager in the Alaska District of the Corps in February 2003. After the application and interview process was completed, Plaintiff received notice that she was not selected for the promotion on or about August 2003. Plaintiff suffered the consequences of not being promoted in Hawaii from that time until her eventual transfer to Washington D.C. in April 2006. This was

---

[4] The District of Alaska is a proper venue for this case under all three bases for jurisdiction pursuant to the Title VII venue provision.

11

the fourth time since 2000, while Plaintiff was situated in Hawaii, that she applied for a GS-13 promotion and was denied. Complaint ¶ 15.

Hawaii is a proper venue for this claim because Plaintiff felt the effects of the Panel's decision in Hawaii where she was employed from 2000 through April 2006.  The Ninth Circuit made clear that venue is proper where the effects of the employment decision are felt and those effects are felt where the plaintiff works.  Passantino, 212 F.3d at 505-06.  A federal district court in Arizona, relying on Passantino, reached the same conclusion, where a Postal Service employee, stationed in Arizona, was denied a transfer and promotion to a position in Ohio.  Berry v. Potter, 2006 WL 335841, *3 (D. Ariz. 2006).  The court held that venue was proper in both Arizona, where the plaintiff worked, and Ohio, where the employment decision was made regarding the promotion.  Id.

Defendant's attempt to distinguish Passantino and Berry from the present case is unpersuasive.  Defendant argues that because Plaintiff specifically targeted a job in Alaska, as opposed to simply being subjected to the decisions from a distant employer headquarters, she should have to bring her suit in that district.  First, Berry also targeted an out-of-state promotion, and the court still concluded that he had the right to litigate his claim where he felt the effects of the alleged

12

discrimination.  Berry, 2006 WL 335841, *3.  Furthermore, the
Ninth Circuit's concern that employers may avoid litigation over
discriminatory practices because of geographical hurdles remains
applicable here.  Starting in 2000, Plaintiff sought a promotion
to a higher grade, GS-13, and had done so on at least three
previous occasions.  As an employee of a geographically diverse
workforce such as the Corps, Plaintiff's opportunities for
advancement could arise in a variety of distant locales.  In
order to give herself the greatest opportunities to attain the
promotion she sought, Plaintiff had to seek transfers and
promotions both in and out of her district.  However, each time
she was denied a promotion, she felt the effects of that denial
in Hawaii.

        To require an individual, who perceives that she has
been discriminated against, to pursue litigation in each venue
that she attempted to attain a promotion, could have the adverse
effect of chilling the employee's civil rights and allowing
employers to drive up litigation costs that the Ninth Circuit
cautioned against.  Passantino, 212 F.3d at 505.  The Ninth
Circuit recognized that Congress intended to "afford citizens
full and easy redress of civil rights grievances," and to adopt
Defendant's position would directly contradict that purpose.  See
Id. at 504 (internal citation omitted).  The Court agrees with
Defendant that the expansive holding in Passantino ought to be

restricted to the policies enunciated and facts presented, but the Court finds that the present case is situated within those boundaries.

Defendant also claims that <u>Berry</u> is the only case in which a later court followed or adopted the <u>Passantino</u> expansion of the Title VII venue provision.  To the contrary, at least three other courts have cited <u>Passantino</u> as support for a liberal construction of the Title VII venue provision.  <u>See</u> <u>e.g.</u>, <u>Ellis v. Costco Wholesale Corp.</u>, 372 F. Supp. 2d 530, 536 (N.D. Cal. 2005); <u>Dean v. Handysoft Corp.</u>, 2005 WL 362662, *2 (E.D. Pa. 2005); <u>Cormier v. Pezrow New England, Inc.</u>, 771 N.E.2d 158, 163 n. 4 (Mass. 2002).  Moreover, Defendant cites no subsequent case, nor could this Court find one, where a court questioned or disagreed with the holding in <u>Passantino</u> as it relates to the venue provision of Title VII.

Finally, Defendant's citations to <u>Darby</u>, 231 F. Supp. 2d 274, and <u>Donnell v. National Guard Bureau</u>, 568 F. Supp. 93 (D.D.C. 1983) are unavailing.  Neither of those plaintiffs sought to exercise jurisdiction over the respective defendants in the district where they worked, but rather sought jurisdiction where the employers' decision-making practices occurred; and venue was transferred back to the district where they worked, which was where the alleged discriminatory action occurred.  <u>Darby</u>, 231 F. Supp. 2d at 278 n. 2; <u>Donnell</u>, 568 F. Supp. at 94.

For the foregoing reasons, the Court concludes that the District of Hawaii is one of the proper venues for Plaintiff to pursue her Title VII employment discrimination case.  As venue is proper, the Court DENIES Defendant's Motion to Dismiss pursuant to Rule 12(b)(3) and the request to transfer the case pursuant to 28 U.S.C. § 1406(a).  However, the Court will consider whether the case should be transferred to the District of Alaska for the convenience of the parties and witnesses or in the interest of justice pursuant to 28 U.S.C. § 1404(a).

## II.  **Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)**

A district court may transfer a civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The parties agree that the District of Alaska is a proper venue in which the action might have been originally brought.  Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Jones, 211 F.3d at 498 (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239 (1988)).

Courts must weigh multiple factors in determining whether to transfer a particular case including (1) the plaintiff's choice of forum; (2) the respective parties' contacts

with the forum, (3) the contacts relating to the plaintiff's cause of action in the chosen forum; (4) the differences in the costs of litigation in the two forums; (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (6) the ease of access to sources of proof. See Jones, 211 F.3d at 498-99 (listing those factors most relevant to this case). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal, 805 F.2d at 843 (citation omitted). Ultimately, the moving party has the burden of showing that an alternative forum is the more appropriate forum for the action. Jones, 211 F.3d at 499.

**1.  Plaintiff's Choice of Forum**

The first factor weighs strongly in favor of maintaining the cause of action in the District of Hawaii. Plaintiff elected to sue Defendant in the District of Hawaii, despite having since relocated to Washington, D.C.. "[T]here is normally a strong presumption in favor of honoring the plaintiff's choice of forum." Hi-Pac, Ltd., 980 F. Supp. at 1140 (quoting Creative Technology, Ltd. v. Aztech Sys., Ltd., 61 F.3d 696, 703 (9th Cir. 1995)); Lou v. Belzberg, 835 F.2d 730, 739 (9th Cir. 1987); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S. Ct. 252, 266 (1981). This factor is particularly relevant in Title VII cases where the Ninth Circuit

has construed the venue provision to broaden the fora available to the plaintiff.  Berry, 2006 WL 335841, *4 (citing Passantino, 212 F.3d at 504).

Defendant counters that "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." Belzberg, 835 F.2d at 739 (citing Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)).  As will be discussed, the Court finds that Hawaii has as strong an interest in the adjudication of this dispute as any other potential venue.  See discussion infra Part II.3.  Furthermore, Plaintiff was working in Hawaii at the time the alleged discrimination took place, she interviewed by telephone from Hawaii, and one of the interviewing Panel members works in Hawaii.  Plaintiff also applied for and was denied other promotions to GS-13 positions while she was stationed in Hawaii.  Finally, Plaintiff relocated to Washington, D.C., but avers Hawaii is still her home and she will eventually return to the house she maintains in Hawaii.

The Court finds that operative facts occurred within Hawaii and Hawaii has a particular interest in this case.  Thus, the Court accords great weight to Plaintiff's choice of forum.

## 2.  The Parties' Contacts with the Forum

Throughout the course of the events that are the

subject of this controversy and leading up until the time
Plaintiff filed suit, she resided and worked in Hawaii.
Complaint ¶ 5. The only pertinent contact between Plaintiff and
Alaska occurred when she applied for the Emergency Manager
position in the Alaska District of the Corps. Plaintiff
submitted an application for the position in Alaska, but was
interviewed by telephone in Hawaii.

Defendant oversees the Corps, which is comprised of
eight Divisions and 41 subordinate districts. Reply (Au
Declaration ¶ 3). The Pacific Ocean Division is comprised of
four such districts covering Alaska, the Far East, Honolulu,
Hawaii, and Japan. Id. (Au Declaration ¶ 5). Plaintiff was
employed in the Honolulu District during the time period relevant
to this controversy, and applied for a position in the Alaska
District. Defendant created a hiring panel for the purposes of
selecting the Emergency Manager. The Panel was comprised of two
Defendant employees from the Alaska District and one from the
Honolulu District. Id. (Au Declaration ¶ 9). The Panel members
were located in both Alaska and Hawaii during Plaintiff's
telephone interview.

Plaintiff's contacts with Hawaii significantly outweigh
her contacts with Alaska. Defendant's contacts with both Hawaii
and Alaska are substantial, both in general, and during the
course of the relevant hiring process. Overall, the parties have

18

greater contacts with Hawaii than Alaska, and this factor weighs
in favor of the Plaintiff's choice of forum.

## 3.   Local Interest in the Cause of Action

The public interest in adjudicating an employment
discrimination claim against the federal government is great
throughout the country.  Whether the case is adjudicated in
Hawaii or Alaska, the residents of each state have an equally
compelling interest in ensuring that discrimination cease to
exist in any branch or office of the federal government.  It is
apparent from the facts in this case alone that hiring decisions
of the Corps can affect a wide range of individuals located
throughout the country.  As the Ninth Circuit held, the effect of
an employment decision occurs both where the decision to engage
in the practice is implemented and where the individual works.
See Passantino, 212 F.3d at 505.  The local interest factor is
neutral and does not weigh on either side of the forum selection
determination.

## 4.   Costs of Litigation

Plaintiff's litigation costs will be lower in Hawaii
than in Alaska.  While Plaintiff currently lives in Washington,
D.C., she maintains a home in Hawaii and would not incur costs
for accommodations during a trial in Hawaii.  Opposition
(Tamashiro Declaration ¶ 16).  Plaintiff also submits that she
will call up to fifteen witnesses who can testify as to her

qualifications and experience.  Opposition (Tamashiro Declaration ¶¶ 17(a)-(o)).  Fourteen of the fifteen individuals are currently located in Hawaii, and the other individual, Thomas Brady, makes work related trips from his home in Korea to Hawaii.  Id. Plaintiff also indicates that three medical professionals, all of whom are located in Hawaii, may be called as witnesses to testify regarding her medical conditions.  Id. (Tamashiro Declaration ¶ 18).

Defendant argues that Plaintiff's witnesses are not relevant to the matter at hand because there is no dispute as to Plaintiff's qualifications for the position nor is Plaintiff's health at issue.  Reply at 13.  It would seem that the ultimate issue presented in this action is whether the selection Panel discriminated against Plaintiff based upon the records available to the Panel.  However, the parties did not provide the Court with any information pertaining to regulations governing the hiring process and whether the Panel is subjected to certain limitations as to what materials may be considered.  The Court also notes that two human resources specialists and a workforce management specialist were involved in the evaluations of the candidates' application files.  The Court is similarly uninformed as to the evaluation procedures followed by these personnel specialists.  At this point, the relevance of Plaintiff's witnesses remains in question.  It is unclear whether Plaintiff

submitted recommendations, references, or evaluations from her supervisors or fellow employees as part of her application for the Emergency Manager position; nor is it clear whether her supervisors or fellow employees normally would have been contacted by the Panel or its assistants, or whether they could or should have been contacted.  The Court also finds that the testimony of Plaintiff's medical witnesses may bear on Plaintiff's claim for compensatory damages, specifically as it relates to her ulcers and high blood pressure.  Opposition (Tamashiro Declaration ¶¶ 18(a)-(c)).

Defendant contends that the majority of the critical witnesses to its case reside in Alaska.  Lieutenant Colonel Timothy Griffith, the Chair of the hiring Panel, has since retired from the Army, but resides in Alaska.  Reply (Finnigan Declaration ¶¶ 3-8).  Allen Churchill, a member of the hiring Panel, works and resides in Alaska.  Id.  Steven Philben, another member of the hiring Panel, works and resides in Hawaii.  Id. The three human relations and workforce management specialists that were involved with the case are situated in Alaska, New Mexico, and South Carolina.  Id.  Claims regarding the difficulty of compelling these witnesses to testify or inconvenience must be discounted as five of the six witnesses are Defendant's current employees whom Defendant can compel to testify.  See 15 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §

21

3851, at 421-23 (2d ed. 1986) ("transfer may be denied when the witnesses, although in another district, . . . are employees of a party and their presence can be obtained by that party."); see also STX, Inc. v. Trik Stik, Inc., 708 F.Supp. 1551, 1556 (N.D. Cal. 1988); Galonis v. National Broadcasting Co., 498 F. Supp. 789, 793 (D.N.H. 1980).

In view of the foregoing considerations, the Court cannot definitively conclude that holding the trial would be more convenient for the witnesses or less costly in either Hawaii or Alaska.[5]  Accordingly, this factor is neutral in determining the appropriate venue.

## 5.   Availability of Compulsory Process

Defendant identifies Lieutenant Colonel Griffith as the one witness who falls outside the subpoena power of the United States District Court of Hawaii pursuant to Federal Rule of Civil Procedure 45(c)(3)(B)(iii).  Griffith resides in Alaska and has retired from the Army.  Reply (Finnigan Declaration ¶ 3). Defendant has not submitted an affidavit from Griffith indicating that he would be unavailable to testify at a trial in Hawaii or that he refuses to do so.  There is no reason to assume that this retired government employee would be so reticent.

---

[5]  The Court also notes that Plaintiff's attorney is located in Hawaii.  Furthermore, the United States Attorney, counsel for Defendant, maintains attorneys and offices in both Hawaii and Alaska.

The Court also notes that the parties already had the opportunity to take the video deposition of Griffith, along with the depositions of Philben and Churchill, in February 2006. Opposition at 18 n. 3.  While Defendant claims the utility of this deposition is minimal because it was conducted for the purposes of the EEOC proceedings, it appears that the issues that were before the EEOC and this Court are substantially similar. In any event, if Lieutenant Colonel Griffith is not available to testify at the trial, the parties could conduct a video deposition.  In conclusion, the potential unavailability of witness Griffith weighs slightly in favor of Defendant in the Court's determination of venue.

**6.  Ease of Access to Sources of Proof**

Finally, Defendant argues that the vast majority of the relevant documentary evidence is in Alaska.  The Corps maintains the files and records relating to the hiring process for the Emergency Manager position at Fort Richardson and Elemendorf Air Force Base, which are both located near Anchorage, Alaska.  Reply (Trent Declaration ¶ 11).  The records from Plaintiff's EEOC claim are also housed in Alaska.[6]  Id.

However, Defendant ignores the possible relevance of

---

[6] Plaintiff asserts, without supporting evidence, that all of these documents could be easily transferred to the Honolulu division of the Pacific Ocean Division.  Opposition at 17.  It would appear there should be no difficulty in doing so.

23

Plaintiff's own employment records from her twenty-five years of service with the Corps.  Much like Plaintiff's witnesses, these records may be relevant to the assessment of Plaintiff's candidacy by both the hiring Panel and the personnel specialists. While the parties have not addressed the current location of these records, the Court presumes that such personnel records would be situated in the district where the employee worked.  As stated, Plaintiff was located in Hawaii throughout the entire time period during which she attempted to secure a promotion to a GS-13 position.

The access to sources of proof factor weighs in favor of Defendant's forum choice of Alaska, as the records most pertinent to Defendant's hiring decision are stored in Alaska. However, access to all pertinent records appears readily available so this factor bears little consideration.

After weighing all of the relevant factors, the Court upholds Plaintiff's selection of the District of Hawaii as the appropriate forum in this matter.  As there is a strong presumption in favor of maintaining a plaintiff's choice of forum, especially in Title VII cases, the Court finds that Defendant did not meet the high burden necessary to show that convenience or justice favors transfer.  Accordingly, the Court DENIES Defendant's Motion to Transfer.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss for Lack of Venue brought pursuant to Federal Rule of Civil Procedure 12(b)(3).  The Court finds that the District of Hawaii is one of the venues where the "unlawful employment practice is alleged to have been committed," satisfying Title VII's specific venue provision found in 42 U.S.C. § 2000e-5(f)(3).  As alleged, Plaintiff suffered the effects of the employment decision in Hawaii, where she worked at the time Defendant decided not to promote her.

The Court also DENIES Defendant's Motion to Transfer the case to the District of Alaska under 28 U.S.C. §§ 1404(a) and 1406(a).  Finding that the District of Hawaii is one of the proper venues for Plaintiff's claims, the Court concludes that the balance of factors regarding convenience and justice weigh in favor of upholding Plaintiff's choice of the District of Hawaii as the appropriate forum.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 19, 2006.

Alan C. Kay
Sr. United States District Judge

25